PER CURIAM
*549 This governmental-immunity case raises a first-impression issue deriving from the Court's decisions in Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371 (Tex. 2006), and City of Dallas v. Albert , 354 S.W.3d 368 (Tex. 2011). The question is whether a defendant can prevail on the merits of its germane, connected, and properly defensive counterclaims against a governmental entity when the governmental entity recovers monetary relief on its affirmative claims by filing a lien and a lis pendens and then nonsuits its affirmative claims. We hold that the governmental entity's nonsuit does not negate the defendant's right to pursue its counterclaims to the extent it seeks an offset against the amount the governmental entity recovered through the litigation process.
Petitioner C. Borunda Holdings, Inc., operates pecan orchards. It entered into a series of water-supply agreements with the Lake Proctor Irrigation Authority, a political subdivision. See TEX. SPEC. DIST. CODE § 7502.002 ("The Lake Proctor Irrigation Authority of Comanche County is (1) a conservation and reclamation district under Section 59, Article XVI, Texas Constitution ; and (2) a political subdivision of this state."). Lake Proctor later sued Borunda, alleging that Borunda had breached the 2012 and 2013 agreements by underpaying Lake Proctor in the amount of $111,481.41. Borunda filed counterclaims alleging that Lake Proctor breached the contracts and committed fraud by failing to make reasonable efforts to provide Borunda water on a comparable basis to other customers. According to Borunda, Lake Proctor's breach during an historic drought caused Borunda to lose more than 2,000 pecan trees and face imminent financial ruin.
Shortly after Lake Proctor filed suit, it recorded a crop lien and a lis pendens against Borunda's orchards. Borunda later decided to sell some of its land to generate cash and avoid bankruptcy, but Lake Proctor's lien and lis pendens prevented it from doing so. Allegedly in dire financial straits, Borunda paid Lake Proctor $118,045.52 (the amount Lake Proctor sought, plus attorney's fees) to remove the lien and lis pendens, but Borunda continued to pursue its counterclaims seeking an offset against that payment.
Lake Proctor then filed a plea to the jurisdiction, arguing that immunity deprived the trial court of jurisdiction over Borunda's counterclaims. The trial court ultimately entered an agreed order on the plea, finding that it had subject-matter jurisdiction "only ... to the extent that [Borunda] seeks monetary damages as an offset for damages sought by [Lake Proctor] for breach of contract based on [the 2012 and 2013 agreements,] which shall not exceed the monetary damages for the affirmative claims asserted by [Lake Proctor]." A few months later, Lake Proctor nonsuited its claims against Borunda and filed a second plea to the jurisdiction and a motion for summary judgment. In these new pleadings, Lake Proctor argued that because it was no longer pursuing its claim for damages against Borunda, immunity barred Borunda's counterclaims and Borunda could not prevail on any claim for an offset.
We held in Reata that when a governmental entity asserts claims for monetary *550 relief, immunity does not protect the entity against the defendant's counterclaims for monetary relief that are "germane to, connected with, and properly defensive to" the government's claims. 197 S.W.3d at 376-77. This is not because the governmental entity "waives" its immunity by filing a claim for affirmative relief. Id. Instead, the scope of governmental immunity simply does not reach the defensive counterclaims to the extent that any recovery on the counterclaims serves as an "offset" against the government's recovery on its affirmative claims. Id. at 377.
Reata led to the subsequent issue of whether governmental immunity applies to germane, connected, and properly defensive counterclaims if the governmental entity nonsuits its affirmative claims without having recovered on them. We resolved that issue in Albert , holding that a governmental entity that voluntary nonsuits its affirmative claims without having recovered on them does not "reinstate" immunity against the defendant's counterclaims. 354 S.W.3d at 374-75. Because the governmental entity "did not have immunity from suit as to [the defensive counterclaims], it could not either 'reinstate' such immunity, or, put differently, in effect create it, by nonsuiting" its affirmative claims. Id.
We acknowledged in Albert , however, that the defendant in that case could not prevail on the merits of its counterclaims because the governmental entity was no longer "pursuing a claim for damages to which an offset would apply," so the governmental entity "would not have a recovery for the [counterclaims] to offset." Id. at 376. The governmental entity could therefore obtain summary judgment on the merits of the counterclaims because they sought only an offset against the governmental entity's recovery, yet the governmental entity had waived any such recovery. Id. But the governmental entity could not prevail on jurisdictional grounds because immunity did not bar the counterclaims. Id. ; see also Sharyland Water Supply Corp. v. City of Alton , 354 S.W.3d 407, 414 (Tex. 2011) ("Even if [the governmental entity's] rescission counterclaim meant that it was not entitled to immunity from suit at least up to the amount of an offset, the offset disappeared when [the governmental entity's] counterclaim was defeated on summary judgment.").
In this case, the trial court granted Lake Proctor's second plea to the jurisdiction in part, finding as it had in its agreed order on the first plea that it had subject matter jurisdiction to the extent that Borunda sought an offset against Lake Proctor's recovery. On the same day, however, the trial court granted summary judgment for Lake Proctor, ordering that Borunda take nothing on its counterclaims seeking that offset. The court of appeals affirmed. 2016 WL 7650559, at *2 (Tex. App.-Eastland December 26, 2016). Borunda then petitioned for review in this Court.
The ultimate issue in this case is whether Lake Proctor was entitled to summary judgment on the merits of Borunda's counterclaims after Lake Proctor recovered the money it was seeking and then nonsuited its affirmative claims. The result turns on whether Borunda relinquished or waived its right to pursue its counterclaim for an offset against Lake Proctor when it paid Lake Proctor's claims in full.
As an initial matter, we are not concerned here with whether governmental immunity bars Borunda's counterclaims. Under Reata , it clearly does not because those counterclaims were germane to, connected to, and properly defensive to Lake Proctor's affirmative claim for breach of contract, and sought only to offset any damages Lake Proctor might recover. See Reata , 197 S.W.3d at 377. This is not because *551 Lake Proctor waived immunity by filing its affirmative claims, but because "governmental entities do not have immunity from offsetting claims germane to, connected to, and properly defensive to monetary claims by the entities." Albert , 354 S.W.3d at 376. And under Albert , Lake Proctor's nonsuit of its affirmative claims did not reinstate or create immunity from Borunda's counterclaims because Lake Proctor "could not reinstate or create something it did not have." Id. ; see City of Dall. v. Martin , 361 S.W.3d 560, 561 (Tex. 2011) ("[B]y non-suiting its counterclaim the City did not reinstate immunity from suit. ..."). Just as Lake Proctor "generally cannot waive immunity from suit by its actions, it cannot create immunity by its actions." Albert , 354 S.W.3d at 376. The trial court thus had jurisdiction over Borunda's properly asserted counterclaims even though Lake Proctor nonsuited its affirmative claims. See id. at 375.
We are concerned here instead with whether Lake Proctor was entitled to summary judgment on the merits of Borunda's counterclaims. Lake Proctor moved for summary judgment on the ground that Borunda could not prevail on its counterclaims because, having nonsuited its claims, Lake Proctor could obtain no "recovery" against which any judgment on the counterclaims could offset. The trial court granted the motion, and the court of appeals affirmed, holding that, "with [Lake Proctor's] claims to affirmative relief gone, there was nothing against which Borunda could apply an offset, and Borunda could not recover a judgment from [Lake Proctor]." 2016 WL 7650559, at *2.
But unlike the governmental entities in Albert and Sharyland , Lake Proctor did recover on its claims against Borunda through this litigation before it nonsuited those claims. In fact, Lake Proctor recovered all the monetary relief it was seeking in this case when Borunda paid that amount to remove the lien and lis pendens. The question, then, is whether Borunda may still seek and obtain an offset against that amount based on Lake Proctor's alleged breaches of the water-supply agreements. This is not an immunity or jurisdictional issue; it is an issue that goes to the merits of Borunda's counterclaims. See Albert , 354 S.W.3d at 375 (noting that trial court retained jurisdiction over counterclaims even though governmental entity had nonsuited affirmative claims).
On this point, Reata and Albert indicate that the merits of Borunda's counterclaims depend not on whether the government's affirmative claims remain but on whether the governmental entity obtained a "recovery" that the counterclaims can offset. See id. at 374 (holding that immunity did not apply against counterclaims "that would offset, in whole or in part, any recovery by the City and that were germane to, connected with, and properly defensive to the City's claims") (emphasis added), 376 (reasoning that parties could not recover on claims after governmental entity nonsuited affirmative claims because governmental entity "would not have a recovery for [opposing parties'] claims to offset") (emphasis added); Reata , 197 S.W.3d at 375 ("If the opposing party's claims can operate only as an offset to reduce the government's recovery , no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted.") (emphasis added), 377 (noting that immunity barred jurisdiction over any counterclaim "for damages against the City in excess of damages sufficient to offset the City's recovery ") (emphasis added), 378 (concluding that "the City does not have immunity from Reata's claims germane to, connected to, and properly defensive to claims asserted by the City, to the extent any recovery on those claims will offset any recovery by the *552 City from Reata") (emphasis added). Here, Lake Proctor has obtained a full "recovery" from Borunda, and Borunda's counterclaims seek to offset that recovery.
We now turn to the question of whether Borunda can obtain an offset against a recovery that Lake Proctor obtained by filing a lien and lis pendens on Borunda's property. Lake Proctor argues that Borunda cannot obtain an offset because it paid voluntarily. Lake Proctor contends that if Borunda wanted to preserve its claim for an offset, it should have deposited the funds with the trial court and petitioned the court to cancel the lis pendens under the Property Code, see TEX. PROP. CODE § 12.008(a), instead of paying the amount Lake Proctor demanded. Borunda argues that whether a party obtains a recovery through a lis pendens instead of through a final judgment on its affirmative claims does not preclude the opposing party from pursuing its counterclaims for an offset against that recovery.
We agree with Borunda. Lake Proctor obtained a recovery through this litigation, in which it asserted affirmative claims for breach of contract. A lis pendens is a litigation tool that is "predicated on the pendency of a suit at the time of the sale or transfer with respect to which it is sought to be invoked. Thus, a lis pendens has no existence separate and apart from the litigation of which it gives notice." 1A TEX. JUR. 3D ACTIONS § 408 (2018). Borunda may pursue judgment on its counterclaims to offset the amount it paid to remove the lis pendens created by Lake Proctor's suit.
Nothing in Reata or Albert suggests the contrary. In fact, the policy reasons we have cited to support our holding that immunity does not apply to defensive counterclaims support permitting Borunda to pursue an offset through its counterclaims here. Specifically, we permit such counterclaims to the extent of an offset against the government's affirmative claims because: (1) "when the State sues a private party, the general public stands to lose nothing"; (2) doing so avoids "jurisdictional problems in asking courts to enforce a judgment against a government entity"; and (3) allowing such counterclaims promotes "fundamental fairness." City of Galveston v. State , 217 S.W.3d 466, 472 (Tex. 2007) ; see Albert , 354 S.W.3d at 379 (explaining that the Court had abrogated immunity against such counterclaims "for two primary reasons: first, it would have been fundamentally unfair," and second, "the City had little room to complain about litigation costs because it had decided to expend resources on litigation when it filed its affirmative claim").
Essentially, these considerations illustrate that the primary concern in Reata was ensuring that any outcome in favor of a counterclaiming defendant would not be paid with taxpayer dollars. That is why Reata announced the rule now at issue in this case: "the opposing party's claims can operate only as an offset to reduce the government's recovery." 197 S.W.3d at 375. This concern is not implicated here because any amount Lake Proctor might be required to pay Borunda would be a "refund" of money Lake Proctor recovered in this litigation, and thus no tax resources will be required to "pay a judgment." Id. Lake Proctor argues that its "fiscal planning" will be "disrupted" because it has already deposited Borunda's payment into its treasury. See ids="8409239" index="19" url="https://cite.case.law/sw3d/197/371/">id. This argument is unpersuasive. By initiating the suit, Lake Proctor bore the risk that it may win or lose money during the litigation process. See Albert , 354 S.W.3d at 379 (noting that in Reata , "the City had little room to complain about litigation costs because it had decided to expend resources on litigation when it filed its affirmative claim").
*553 Moreover, it would be fundamentally unfair to allow Lake Proctor to assert affirmative claims against Borunda, recover on those claims by filing a lien and lis pendens in connection with the litigation, and then deny Borunda any opportunity to obtain an offset against that recovery. See Reata , 197 S.W.3d at 375-76 ("[I]t would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."); see also Albert , 354 S.W.3d at 380 ("[H]ere we do not see any fundamental unfairness or inequity occurring."). The court of appeals' opinion here does not serve that policy. We have long held that when the government or its subdivisions file affirmative claims for relief, they are "bound by the same rules as other litigants." Anderson, 62 S.W.2d at 110 ; State v. Cloudt , 84 S.W. 415, 416 (Tex. Civ. App. 1904, writ ref'd). As we stated in Albert :
Under litigation rules applicable to ordinary litigants, and thus to the City once it filed its counterclaim, the City was entitled to nonsuit its counterclaims. If a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become moot, and jurisdiction as to the claim is lost. But a nonsuit is not allowed to prejudice the right of an adverse party to be heard on a pending claim for affirmative relief.
354 S.W.3d at 375 (internal citations omitted). In an ordinary case between two private entities, Borunda would have an opportunity to litigate its counterclaims after its adversary nonsuited. See Tex. Mut. Ins. Co. v. Ledbetter , 251 S.W.3d 31, 37 (Tex. 2008) ("Parties have an absolute right to nonsuit their own claims, but not someone else's claims they are trying to avoid."). The fact that Borunda's claims are limited to the amount Lake Proctor recovered by filing a lien or lis pendens does not preclude Borunda from pursuing those claims. Therefore, it would be "fundamentally unfair" to forbid Borunda from recovering on its properly asserted counterclaims, up to the amount Lake Proctor recovered from it earlier in the litigation.
Accordingly, we agree with the court of appeals that under Reata , immunity does not apply to Borunda's counterclaims seeking an offset against the amount Lake Proctor sought to recover through this litigation. But we disagree with the court of appeals' conclusion that Borunda cannot prevail on the merits of its counterclaims merely because Lake Proctor obtained its recovery by filing a lien and lis pendens. We therefore grant Borunda's petition for review, and without hearing oral argument, see TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.